Counsel, good morning. Good morning. May it please the court. I'm Dorothea Langsom. I'm with Altshuler-Berzan and I represent the petitioners. I would like to reserve two minutes for rebuttal. The heart of this case is the immigration judge's holding that petitioners failed to establish continuous presence. That holding was wrong as a matter of law and contrary to this court's decision in Vera-Villegas because the immigration judge improperly imposed on petitioners the burden to produce certain types of formal documentary proof. The petitioners did present oral and written evidence from employers, landlords, family and friends establishing continuous presence spanning the entire period at issue and there was no evidence to the contrary. What if we agree with you on that point, that the evidence is sufficient in the record as to the continuous presence? What happens next? Then the court would grant the petition and remand to the BIA for decision on the remaining issue. On hardship and the other issues? Yes. Okay. And then we might as well get this out in the open because I know we're going to hear it from the government. If you read the decision, the judge does make a statement about the hardship. And the question for us is, is that an alternative holding or what is that statement that was made in the decision? That statement is dicta. It's some thoughts and some speculation about the issue. The ‑‑ And why do you say that? I mean, how are we supposed to figure out what's dicta and what's real if it's in, you know, not a very long order, the oral decision of the immigration judge? Well, for one thing, the courts ‑‑ the immigration judge did make clear express ‑‑ did make a clear express holding on the issue of continuous presence. She began discussing the findings of fact by saying it was clear that the petitioners had not established continuous presence. She concluded the discussion of the findings of law by saying the court must conclude that they haven't shown physical presence and, therefore, they're not eligible for cancellation of removal. The references to the hardship are phrased as the court does not believe. The court ‑‑ Sort of like a passing thought and not a conclusion. Yeah, the court was ‑‑ the immigration judge was clearly willing to discuss issues without deciding them. Right before she makes the conclusion about continuous presence at the record at page 48, the immigration judge says, discussing the ultimate discretionary decision, that there were questions raised about that issue. So it's clear that ‑‑ and she has just discussed some of the factors going to the ultimate discretionary decision. And she ends that with there are questions raised. So she's clearly willing to discuss issues without making an ultimate holding on each of those issues. I would also mention that even if it's unclear to the court whether there is an alternative holding, I don't believe it is unclear, but even if it's favor of judicial review of administrative agency action, some ambiguous language in the immigration judge's opinion shouldn't divest the court of jurisdiction to review a holding she clearly did make. And also I would note that the Board of Immigration Appeals did have the opportunity to address and to resolve any ambiguity there may be, but chose not to do so. That brings me to another entire subject. Are you prepared by any chance to discuss the issue of streamlining? I'm prepared. That's not the principal argument I was hoping to discuss today. No, I know it's not your principal argument, but let's assume, as Judge McEwen did, that you prevail on your principal argument. Are you prepared to discuss what the remedy is? Well, two questions. Are you prepared to discuss whether we should then proceed separately to decide the question of streamlining in this case? Or alternatively, are you prepared to discuss whether on remand this should be sent back to a single judge or whether it should be removed from the streamlining process? On the first question, I believe that if the court finds that continuous presence is established, it does not need to address the streamlining issue in this case. Well, we sometimes do some of those issues even though we don't need to. Yes. And then there's the... Some people. Yes, some people. Even some of us here do from time to time. And you still have to get to the question of whether if we return this, whether it was properly streamlined in the first place and therefore goes back to one judge, or if it was not properly streamlined, does it then go to one now or should it go to the full three-person board? Yes. Well, I believe that because the extreme hardship issues and the initial discretionary decisions haven't been decided yet, that the Board of Immigration Appeals would remand, whether it's one judge or three judges, would remand for those initial decisions to be made by the immigration judge. But to directly answer your question, I think that if it's remanded to the Board of Immigration Appeals to have one judge decide the case again, if it was not, we don't believe as a matter of due process, proper for one judge to decide without opinion below, that it would not now be proper for one judge to decide without opinion. Is that a decision you think is made that the Court of Appeals are back at the administrative level to review the case in its... We're just now assuming it had a different posture, assuming that you were to prevail on the continuous presence. I don't think that there's any reason that the Court of Appeals couldn't address whether the Board of Immigration Appeals should review this case not under streamlining procedures. But again, I think that the proper steps may be to have it remanded all the way back to the immigration judge. And so at that point, it would be a different case... That would be up to the board. Pardon me? That would be up to the board whether it felt satisfied with what the immigration judge had done thus far and prepared to decide on that basis or whether it needed to have the immigration judge make a further decision. That, I think, I would agree with Judge McKeown's implication as to that, that that's not for us, that's for the board. So whether they wish to give it back to an immigration judge. The question is whether it was up to us or the board to, if the board improperly streamlined it the first time, whether we should tell them that and tell them don't streamline it again if we thought that was a remedy or whether we should just send it back and let them make the mistake again if we thought it was a mistake. I don't think that there is anything stopping the court from instructing the board not to streamline when it has, you know, assuming it has found as a matter of law that it violated due process to streamline in the first place. Let me ask another question. What is the effect, if any, about the suspended counsel in this case? Well, that's the basis for our arguments that it violated due process to streamline. Okay. So I'm just trying to tie this up. So the – because of the suspended counsel, that's the reason you think it shouldn't have been streamlined, as opposed to the fact that, in your view, the service was wrong on the continuous presence requirement. Well, those are both reasons that it should not have been streamlined. Did you – but I mean, I'm still having trouble figuring out the suspended counsel, where he fits in. Yes. To the framework of your argument. Right. I think at the point that counsel filed a brief to the BIA, and the BIA, the actual individual judge who – or board member who decided the case, knew that counsel had been suspended. I think that – and also, there was no reason to think that the petitioners had any notice of this. At that point, the BIA needed to take some sort of remedial action. The BIA suspended him. The individual BIA board member knew that, and there's no provision for notice to petitioners. So at that point, some action needed to be taken. Now, maybe it was notifying petitioners at that time, but what we argued in our brief was that, at the very least, when you have this situation, that's a time when the quick-review method of affirmance without appeal does not satisfy due process. Thank you. Thank you. May it please the Court. My name is Victor Lawrence, and I represent the Attorney General. My name is Ken. Thank you, Your Honor. This Court should deny this petition for review in this cancellation and removal case just because the judge used arguably stronger language in her conclusion regarding the continuous residence requirement doesn't vitiate the fact that she made a determination on the hardship requirement as well. See, if we had a nice opinion from the BIA that explained they were relying on that, we'd have a nice, easy case, instead of a streamlined case where you don't tell us what the basis is of the BIA decision. Well, I think the BIA felt much the same that I do, respectfully, Your Honor, that the decision of the immigration judge did lay out the fact that she made a conclusion regarding hardship. How can we tell that? Well, again — It doesn't — it certainly doesn't seem that way to your opponent. As to a reasonable person reading this decision, certainly there can be, to put it kindly for the government, a dispute as to whether they decided that discretionary issue. What it says is it raises questions about it. Well, Your Honor, for instance, the Court uses — the immigration judge uses a language that she does not believe that the Respondents have made — I'm at page 47 of the record. She does not believe that the Respondents have made an adequate showing regarding extreme hardship. It's about two-thirds down the page. Now, just because she used the word believe and later used the word conclude doesn't mean that one's right and one's not. In both cases, she's making her analysis. This is under her — on page 46, it says analysis and findings of law. These are all findings. Well, she doesn't say that she doesn't believe that they made an adequate showing. She says, but she didn't believe they made an adequate showing through the documents, and then goes on to say their testimony is much more compelling and specific in this particular matter, but the best evidence is documentation, so they should have provided more. But she never comes to the conclusion that this is not enough in total. Your Honor, I understand your point, but I respectfully disagree, because if you go to page 48 of the record — Okay. Let's try that one. 47 didn't work. Well, at the bottom of page 47, you're right, she starts saying that the testimony would be more compelling. She doesn't believe that the Respondents have made an adequate showing through the documents. I didn't mean to send you back to 47. You were going to 48. Right, right. Let's try that one. I was — okay. But then she discusses towards the very bottom and then into page 48 that there's this other both the wife and the child are from Mexico. I'm not quite sure how that translates into a hardship issue, but that was what was raised below by the counsel for the Respondents at that time. And the Court notes, she says, this is somewhat of an unusual situation, but the Court does not believe that this by itself, referring to the different origins of the Respondents, or even in conjunction with the daughter's medical situation, considering both claims, rises to the level of extreme and exceptional and extremely unusual hardship. That, we submit, is a holding of this judge. It's an independent finding. It's a discretionary finding. It's not reviewable by the Court under the Court's precedent of romero terris. And even if, which we dispute, that there's an error with respect to continuous residence, this is an independent finding that's nonreviewable, and therefore, there's no prejudice with respect to the fact, if you do find that there's an error in the judge's analysis on continuous presence, that there's no prejudice because there was a separate, independent, nonreviewable finding on a discretionary decision, which this Court doesn't have jurisdiction to. I appreciate your argument, but if you just go down further where you reference the conclude language, she says, based on the foregoing, however, the Court must conclude that the Respondents have not met the physical presence requirement of the statute and therefore will fail in their applications for cancellation of removal. That seems to me that what she did was she denied it because of the presence requirement. I understand your position, Your Honor. It's ambiguous. And I, you know, from my perspective, it's this is what the basis of her denial. I just submit that it's one of the bases. And I have to concede that the language that she uses with respect to this basis for the denial is stronger by saying I conclude that he didn't meet. But she didn't say, she says, however. I'm not catching this. Okay. There's no need to argue about what, you know, we can both read what it says. Sure. But we respectfully submit that this is a situation where she made two decisions. Why else would she discuss this issue regarding extreme and unusual hardship? She, and to signify why she believes that they didn't make an adequate showing. Why would she do that at all if she was only going to conclude based on continuous presence? Well, as Judge June pointed out earlier, some of us tend to put things in decisions that don't need to be there. And I've seen that before myself. But this would be a situation where we can't assume that the judge is just, you know, theorizing on different things and saying, well, you know, this hardship issue is kind of close. And her, if her, if this decision is as counsel would like it to be read, to say that she only made her decision on continuous presence, why at all would she even delve into the hardship issue if she wasn't making the finding? And we believe that on page 48 of the record, that's a clear finding. She discusses it over two pages of the opinion, 47 and 48. In a, you know, it's a four-page opinion. It's all under the analysis and findings section. I mean, it's four pages from the analysis and finding. She spends two pages on that and says she doesn't believe it rises to the level of exceptional, extremely unusual hardship. And again, you know, she uses stronger language with respect to continuous presence, but that doesn't vitiate the fact that she made a finding on the first issue. So if you accept that point of view, which I hope the Court does overall, it, I'd suggest that, there's no prejudice found if you feel that there's error in the continuous presence argument. There's no prejudice because you have this independent finding where she said that they didn't meet the hardship standard. That's not reviewable by the Court under the Court's precedent of remeritaris. And therefore, there's no prejudice in the fact that she may have erred in this other part of the decision. So in which case, the Court should deny the petition for review. But I take it there's some questions about that. We said hypothetically, we asked, you know, counsel, what if we were to conclude that the immigration judge was inaccurate and wrong, because we do have authority to review the continuous presence issue. But if we were to conclude that there was substantial evidence going the other way, what would we do with the case? Let's say that we disagreed with you and thought that we can't figure out from pages 47 or 48 the hardship. So therefore, if we agree with you, we don't have jurisdiction, and then the case is easy, and we just dismiss the petition. So that's it. The preferred finding. Preferred finding by you, number one. It's not easy. Okay. So if we can't do it the easy way, and then I know you would disagree, of course, on the continuous presence, and that's just something we have to figure out based on the record and based on the standard of review one way or the other. But again, if we were to disagree with you on that and say no finding on hardship, but the immigration judge was wrong on the continuous presence, I think Judge Reinhart and I have been asking them, well, what do we do and how does that interplay with the streamlining situation? The correct position in government's view is that if the Court were to take that view, that this is just one decision on continuous presence that you disagree with and you want to remand it, then you would remand it to the board and the board would be the board's decision on whether or not they want to streamline it. Well, the question is before that is, wasn't it then improperly streamlined? Because you can only streamline it if the result the I.J. reached was correct and any errors were harmless. So doesn't that necessarily mean that it was improperly streamlined? No, because the board likely read the record the same way the government did in my view by saying, well, there's two issues here, and one of them is the hardship issue. But now once you get a determination, it's like we say when we get a Supreme Court decision, now we know that we were wrong, although we don't really think that. So now you know that you were wrong, even though you don't believe it. So now we know that if, assuming what Judge McEwen says, we send it back, we say the result the I.J. reached was wrong. That means it's a case that should not have been streamlined, doesn't it? Because you don't streamline cases unless the result was correct. Right. But I still think it's a matter of discretion for the board to determine whether or not they would streamline it. Notwithstanding, I understand your view that if you're saying that we're wrong. Well, it's not a view. I mean, it's what the regulation says, that you can streamline it if the result the I.J. reached was correct and any errors were harmless or nonmaterial. So if we now know that this is a case in which the result was not correct, then doesn't that necessarily follow that it was improperly streamlined? So to follow that further, would you recommend to the board that. . . No, then we're going to get to the next step, once I get you to agree with me. Oh, well. Why don't you just agree hypothetically so we can get. . . Right. I can't agree with you there. But I understand your point. But if you want to take it one assumption further. . . If it was improperly streamlined, then the question is whether we should do what you suggest, just send it back to the board and let them decide whether to streamline it all over again so we again don't get any information. Why? Or whether we should say once the case is improperly streamlined and you screw it up, then next time you can't say now we're going to streamline it again, that it's a case which qualifies, even though we've now settled an issue, it's a case that qualifies for full, fair treatment by the board. I think it's fair to say that if you were to take that angle, that it would be a remand with a suggestion that the board develop the issues to understand more about the immigration judge's opinion  because it could be the board comes back and says, we considered that hardship argument to be a definite finding of the immigration judge. You can't assume that the board didn't think that. Do you follow? Yeah. That's not quite what I had in mind. I had in mind that we decided that the. . . Because this Court could take the view as. . . That we just look at this and say we can't tell what the IJ really meant. We just remanded to the board. That really wasn't the premise of the presumption. But we're really taking it very far over. I think I was proceeding on Judge McKeown's two assumptions, that we decided that the decision was not on the hardship ground but solely on the length of time, and that that was A, and that B, that the decision was wrong as to the length of time. I was starting with those two premises. I think this would lead to a very long discussion. Well, the only thing I want to point out, if I may just briefly, Your Honor. . . As long as it's briefly. . . Very briefly. The hardship claim in this case was so weak. That's what makes it so understandable that the immigration judge was actually ruling on the hardship claim itself. If you look at page 195 of the record, it's a note that a doctor allegedly signed for the daughter who was having a skin problem. All it says is that she had a skin problem, and it's now under control. And the whole issue of their hardship is to say that it's going to be an exceptionally, extremely unusual hardship for this daughter to have to go back to Guatemala when she has a skin condition. But yet the evidence in the record at page 195 clearly shows that all it is is she had a skin condition that's now under control. And I think that that's what the judge or it's our position that that's what the immigration judge is saying when she says they haven't made an adequate showing through the documents. Well, can I just ask procedurally, if it went back to the BIA and if we were to conclude we can't figure out if there was a hardship determination, is it correct that the BIA could just simply remand to the IJ for clarification? Absolutely. Or whatever? Does that happen? Absolutely. Or the board could do what this Court should not, which is to look at the evidence, look at the record and say, yeah, there's nothing here that shows exceptionally, extremely unusual. Can a single judge do that? Absolutely. The BIA? Absolutely. But, well, you know my position, which is that I think there are two findings here, in which case the easy route, and I'm not suggesting you take it for yourself. We understand your first shot. Okay. Okay. All right. Thank you, Your Honor. All right. One final thing. You asked Judge Pius. You asked the single judge. The single judge could write an opinion. Is that permissible under the streamlining? I believe so. Yes. I've seen it. You're right. Yeah. I don't know of anything that – yeah, absolutely. It is. All right. Okay. Thank you. Okay. You have 50 seconds, but we gave your opponent a few extra minutes, so we won't be rigid. Thank you. I just wanted to say quickly that the Court does not have jurisdiction to consider the hardship. So the INS is, you know, makes clear that the Court can't review those type of decisions. So to ask the Court to reject this case because there's not sufficient hardship in the record doesn't make sense. I also wanted to point out that neither the IJ nor the BIA made any findings at all about Hugo Jr.'s petition. And so on remand, to have it streamlined again and still have no decision about Hugo Jr. would be another violation of due process, clearly. Also, the IJ treated the family as a unit, I believe, when it reviewed this case, and that's presumably why the IJ did not separately mention Hugo Jr. If the Court does remand for the adult Petitioners, we ask that the Court continue to consider the family as a unit and remand Hugo Jr.'s petition as well. Thank you, counsel. Thank you. Case case derogate will be submitted. Thank you. I've never heard of Hugo Jr. What? I've never heard of Hugo Jr. He can't be here tonight.
judges: Reinhardt, McKeown, Paez